UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
98 MAY 22 AM 9:48
U.S. DISTRICT COURT
N.D. OF ALABAMA

CABLE ALABAMA CORPORATION and )
CABLEAMERICA CORPORATION, )
 )
      Plaintiffs, )
 )
vs. ) Case No. CV-97-S-3159-NE
 )
JUDITH A. BERSHOF INTERESTS, )
INC. and JUDITH A. BERSHOF, )
 )
      Defendants. )

ENTERED
MAY 22 1998

MEMORANDUM OPINION

This action is before the court on the motion for default judgment filed by plaintiffs, Cable Alabama Corporation ("Cable Alabama") and CableAmerica Corporation ("CableAmerica"), seeking a declaration that no broker's agreement exists between the parties, and requesting an injunction against defendants' purported representation of plaintiffs.

I. FINDINGS OF FACT

1. Cable Alabama is a wholly owned subsidiary of CableAmerica, a corporation which owns cable television systems in various parts of the United States. Cable Alabama is located in Huntsville, Alabama. It owns and operates a cable television system encompassing the City of Huntsville, Alabama, Redstone Arsenal, Alabama, Limestone County, Alabama, the City of Madison, Alabama, and parts of the unincorporated area of Madison County, Alabama.

2.  Judith A. Bershof ("Bershof"), President of Judith A. Bershof Interests, Inc. ("Bershof Interests"), is a cable systems broker. (Lewis affidavit ¶ 4.) She and her corporation are in the business of bringing sellers and purchasers of cable television systems together.[1] (*Id.*)

3.  William G. Jackson is President of both CableAmerica and its wholly owned subsidiary, Cable Alabama (Lewis affidavit ¶ 3.) CableAmerica has on occasion retained Bershof's services. On each occasion, Bershof and CableAmerica entered into a written agreement granting Bershof authority to represent CableAmerica when negotiating the sale of one of its cable systems. (*Id.* at ¶ 5.)

4.  However, neither William G. Jackson nor any other officer, agent, or employee of either CableAmerica or Cable Alabama ever entered into any representation agreement, written or oral, with Bershof for the sale of any cable system, or part thereof, located in Alabama. (*Id.* ¶ 6.)

5.  Between April and August of 1997, Bershof called Jackson regarding a potential buyer of Cable Alabama's cable system. (*Id.* ¶¶ 7, 9.)

6.  Jackson advised Bershof that neither Bershof nor Bershof Industries represented Cable Alabama and CableAmerica. Bershof indicated that she represented the potential buyer. (*Id.* ¶ 8.)

---

[1] As discussed hereafter, Bershof is the only representative of Bershof Interests who attended meetings in Alabama, made a telephone call to Alabama, or dealt with the plaintiffs in regard to the sale of the cable television system. (Lewis supplemental affidavit ¶ 10).

2

7. Bershof asked for, arranged, and attended a meeting held in Huntsville, Alabama, on September 5, 1997. That meeting, which lasted approximately two hours, was held in the offices of Cable Alabama at 2401 - 10th Street, Huntsville, Alabama. (Lewis supplemental affidavit ¶ 2.)

8. In addition to Bershof, four other people attended the meeting: William G. Jackson, President of CableAmerica Corporation (hereinafter referred to as "Jackson"); Alan C. Jackson, Vice President of Engineering for CableAmerica Corporation; William Morrow, President of Knology Holding, Inc. (hereinafter referred to as "Knology"); and William H. Lewis, Vice President and General Manager of Cable Alabama (hereinafter referred to as "Lewis"). (*Id.* ¶ 3.)

9. Bershof stated the sole purpose of the September 5, 1997 meeting was to discuss the possible purchase of Cable Alabama's cable television system in Alabama by Knology. Bershof did not hold herself or Bershof Interests out as representing either Cable Alabama or Knology. (*Id.* ¶4.)

10. On September 5, 1997, after the meeting at the offices of Cable Alabama, Jackson and Lewis had another conference with Bershof at the Huntsville International Airport. (*Id.* ¶ 5.) At this meeting, Jackson specifically told Bershof, and Bershof did not dispute, that neither Bershof nor Bershof Interests represented Cable Alabama in any way. (*Id.* ¶ 6.) Bershof stated that she had

3

some type of agreement with Knology pertaining to the acquisition of Mindspring, an Internet service provider. (*Id.*)

11. Following the September 5, 1997 meetings, Bershof called Lewis at his office in Huntsville, Alabama. (*Id.* ¶ 7). The only subject discussed during that telephone call was Bershof's role in a potential transaction with Knology regarding the purchase of Cable Alabama's cable television system in Alabama (*Id.*) Lewis told Bershof that she did not represent Cable Alabama or CableAmerica in any fashion, and Bershof did not dispute this. (*Id.*)

12. The only meetings which Bershof arranged between Knology and Cable Alabama representatives to discuss the possible purchase of Cable Alabama were held in Alabama. (*Id.* ¶ 8.)

13. Approximately one and one-half years prior to the September 5, 1997 meeting in Huntsville, Lewis had met with Felix Boccucci, Vice President of Finance of Knology, regarding the potential sale of Cable Alabama to Knology. (*Id.* ¶ 9). Bershof had absolutely no role in arranging or attending that meeting. (*Id.*) Bershof did not "find" Knology, or bring Knology to Cable Alabama. (*Id.*)

14. On September 27, 1997, and November 20, 1997, Jackson sent to Bershof letters confirming that she did not represent CableAmerica or Cable Alabama. (Lewis affidavit ¶ 14).)

4

15. To date, neither CableAmerica nor Cable Alabama have sold any part of their Alabama systems to Knology. (*Id.* ¶ 15). On December 2, 1997, Bershof's attorney sent to Jackson a letter threatening legal action and demanding that CableAmerica or Cable Alabama pay a fee to Bershof of one percent to one and one-half percent of the selling price, upon the sale of the Alabama Cable system to Knology. (*Id.*)

16. Bershof's attorney also sent a copy of that letter to William Morrow, President of Knology. (*Id.* ¶ 16.)

17. CableAmerica and Cable Alabama do not wish Bershof or Bershof Interests to represent them in any transaction involving their Alabama systems and have not agreed that Bershof or Bershof Interests could represent them. (Complaint ¶ 18; Lewis affidavit ¶ 6.)

18. A default was entered against Bershof and Bershof Interests on March 27, 1998. (Doc. No. 4.)

## II. CONCLUSIONS OF LAW

1. This court has personal jurisdiction over Bershof and Bershof Interests and may enter the requested default judgment. The Eleventh Circuit Court of Appeals has articulated the analytical steps for deciding whether a district court has personal jurisdiction over a defendant:

> The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. First, we consider the jurisdictional question under the state long-arm statute. If there is a basis for the

5

> assertion of personal jurisdiction under the state statute, we next determine whether sufficient minimum contacts exist to satisfy the Due Process Clause of the Fourteenth Amendment so that "maintenance of the suit does not offend traditional notions of fair play and substantial justice." Only if both prongs of the analysis are satisfied may a federal or state court exercise personal jurisdiction over a nonresident defendant.

*Robinson v. Giarmarco & Bill, P.C.,* 74 F.3d 253, 256 (11th Cir. 1996) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S. Ct. 154, 158, 90 L. Ed. 95 (1945)). The Supreme Court of Alabama has interpreted Alabama's long-arm statute as reaching to the fullest extent permissible under the Fourteenth Amendment's due process clause. *Olivier v. Merritt Dredging Co., Inc.,* 979 F.2d 827, 830 (11th Cir. 1992); *Alabama Waterproofing Co., Inc. v. Hanby,* 431 So.2d 141, 145 (Ala. 1983).

2. Jurisdiction is proper where the defendants' contacts with the forum proximately result from actions by the defendants to create a substantial connection with the forum state. *Cronin v. Washington National Insurance Co.,* 980 F.2d 663 (11th Cir. 1993); *Madara v. Hall,* 916 F.2d 1510 (11th Cir. 1990). Bershof and Bershof Interests took actions to create a substantial connection with Alabama. Bershof and Bershof Interests initiated contacts with a cable television system located in Alabama in regard to a potential sale of that system. The sale of the cable television system would involve the transfer of franchises granted by local governmental entities in Alabama. Bershof and Bershof Interests

6

initiated and arranged a meeting which was held in Alabama for the sole purpose of discussing the potential sale of the cable television system located in Alabama. At a second meeting in Alabama on the same day, the subject of Bershof and Bershof Interests' possible representation of CableAmerica and Cable Alabama was discussed. Thereafter, Bershof called the Vice President and General Manager of Cable Alabama at his office in Alabama to discuss the role of Bershof and Bershof Interests in a possible sale of Cable Alabama's cable television system in Alabama.

3. A review of binding precedent demonstrates that those contacts are sufficient to warrant jurisdiction over Bershof and Bershof Interests. For example, the Eleventh Circuit has stated in *dicta* that a single meeting within the forum state, standing alone, would be sufficient for vesting jurisdiction if there was a strong nexus between the meeting and the cause of action. *Delong Equipment Co. v. Washington Mills Abrasive Co.*, 840 F.2d 843, 957 n.10 (11th Cir. 1988); *see also Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 858 (11th Cir. 1990) ("A significant single act or meeting in the forum state has been held sufficient for personal jurisdiction there"). Indeed, "[i]n our technologically sophisticated world permitting interstate business transactions by mail, wire and satellite signals, physical presence by the nonresident defendant is not necessary for personal

7

jurisdiction in the forum state." *Cable\Home Communication Corp.,* 902 F.2d at 858. The Eleventh Circuit previously has found sufficient contacts where a defendant only: (1) orally offered to obtain insurance for a resident of Florida; and, (2) spoke with a Florida resident over the telephone, in a call placed by the Florida resident, about procuring insurance for a Florida resident. *Cronin,* 980 F.2d at 670.

4. Bershof and Bershof Interests had sufficient minimum contacts with Alabama. Those contacts must be considered in light of other factors to decide whether the assertion of personal jurisdiction comports with traditional notions of fair play and substantial justice. *Id.* at 670-71. The factors include the burden on the defendants in defending the lawsuit, the forum state's interest in adjudicating the dispute, the plaintiffs' interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies. *Id.* at 671.

5. Alabama's interest in resolving a dispute over a contract to sell a cable television system located in Alabama which has franchises from governmental entities in Alabama is substantial, as

8

is the plaintiffs' interest in obtaining relief.[2] The inconvenience to Bershof and Bershof Interests, while not insignificant, does not outweigh the factors that mitigate in favor of this court's exercise of jurisdiction over them.

6. Defaulting defendants are deemed to have admitted the plaintiffs' well-pleaded allegations of fact. *Buchanan v. Bowman,* 820 F.2d 359, 361 (11th Cir. 1987). *Nishimatsu Construction Co. v. Houston National Bank,* 515 F.2d 1200, 1206 (5th Cir. 1975). See also 6 Moore's Fed. Prac. ¶ 55.02[2] at 55-18. The issue on this motion for default judgment is whether the complaint states a cause of action. *Id.*

7. The allegations in the complaint, as well as the facts contained in Lewis' two affidavits, show that no valid broker's contract exists between plaintiffs and defendants for the sale of any assets of Cable Alabama. Cable Alabama and CableAmerica have unmistakably communicated to defendants that there is no such contract. Because plaintiffs have not accepted any contract with defendants, there is no contract.

8. For a broker to recover compensation for services, "it is necessary that the person from whom [she] claims, shall have employed [her] to render the services out of which [her] claim

---

[2] See *Cronin,* 980 F.2d at 671, in which the Eleventh Circuit noted that "Florida's interest in resolving a dispute over a contract pursuant to which insurance benefits would be provided to a patient in a Florida hospital is substantial, as is [plaintiff's] in obtaining relief."

9

arises, or that there should have been such an acceptance and ratification of [her] services by such person, as will in the eyes of the law amount to the same thing as original employment." *Stephens v. Bailey & Howard*, 42 So. 740, 740-41 (Ala. 1906). In a factually similar situation, the Eleventh Circuit held that no broker's contract is formed when a business owner tells a broker that he might be willing to sell, but that he does "not intend to pay any sales commission and that [the broker] would have to make arrangements for [her] commission with the buyer." *R.C. Hilton Associates, Inc. v. Stan Musial and Biggie's Inc.*, 702 F.2d 907 (11th Cir. 1983) (applying Florida law). The burden of proof as to the existence of a broker's agreement is upon the person claiming for compensation for her services. *Stephens*, 42 So. at 741. Defendants have not met that burden here. Accordingly, this court finds default judgment is appropriate.

### III. CONCLUSION

An appropriate judgment consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the __21st__ day of May, 1998.

_____
United States District Judge